UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

SANDERS ARONOVA GROSSMAN WOYCIK VIENER
AND KALANT, PLLC,

        Plaintiff,

-against-

ELITE ACCIDENT HELP CORP.,

        Defendant.

Civil Action No.

2:26-cv-04412

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Sanders Aronova Grossman Woycik Viener and Kalant, PLLC ("Plaintiff" or the "Firm"), by and through its undersigned counsel, for its Complaint against Defendant Elite Accident Help Corp. ("Defendant" or "Elite"), alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for fraud, fraudulent inducement, breach of contract, and declaratory relief arising from Defendant's scheme to induce Plaintiff to pay $300,000 per month under an Independent Contractor Agreement effective February 1, 2026 (the "Agreement") in exchange for Defendant's promise to generate "qualified" personal-injury client leads, when Defendant knew, or recklessly disregarded, that it could not deliver qualified leads anywhere near the volume, quality, or cost it had represented.

2. Of the 265 leads Defendant delivered to Plaintiff between October 2025 and April 2026, 204 — approximately 77% were rejected as unqualified and could not be retained as clients. The monthly rejection rate climbed sharply in the months surrounding execution of the Agreement: 62.5% in October 2025, 76.9% in November 2025, 53.7% in December 2025, 70.2% in January 2026, 86.4% in February 2026, and 85.4% in March 2026. Only 57 matters remain active across all stages, and only 4 have settled.

3. Plaintiff also seeks a declaration that the Agreement's mediation-and-arbitration clause is void and unenforceable as to the claims in this action because, like the rest of the Agreement, that clause was procured by Defendant's fraud and is, in any event, unconscionable and should not be permitted to shield Defendant's alleged fraud from judicial scrutiny.

## PARTIES

4. Plaintiff Sanders Aronova Grossman Woycik Viener and Kalant, PLLC is a professional limited liability company organized under the laws of the State of New York, with its principal place of business in Garden City, New York. For diversity purposes, Plaintiff is a citizen of every state of which each of its members is a citizen. Upon information and belief: Ester Aronova, Esq., Yuriy Kalant, Esq., Phyllis Sanders, Esq., David Woycik, Esq., and Joseph Viener, Esq. are each domiciled in, and citizens of, the State of New York; and Marc Grossman, Esq. and Douglas H. Sanders, Esq. are each domiciled in, and citizens of, the Commonwealth of Puerto Rico.

5. Defendant Elite Accident Help Corp. is, upon information and belief, a corporation organized under the laws of the State of Florida, with its current principal place of business at 1110 Ponce De Leon Boulevard, Coral Gables, Florida 33134.  Defendant's previous business address was 1414 NW 107th Avenue, Unit 415, Sweetwater, Florida 33172. Defendant is therefore a citizen of the State of Florida for purposes of 28 U.S.C. § 1332(c)(1).

6. Upon information and belief, Klimis Topouzis is an officer, director, and/or principal of Defendant who executed the Agreement on Defendant's behalf and who made, or directed the making of, the representations described herein.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff has paid Defendant $300,000 per month since at least September 2025, for total payments to date of no less than $1,150,000 and

Plaintiff seeks damages, restitution, and rescission well in excess of the jurisdictional threshold.

8. This Court has personal jurisdiction over Defendant because Defendant purposefully directed marketing and lead-generation activities toward New York consumers, contracted with a New York professional entity, agreed that the Agreement would be governed by New York law, and agreed that any arbitration under the Agreement would be conducted in New York, New York.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including negotiation and performance of the Agreement, delivery of leads concerning New York-based prospective clients, and communications directed to Plaintiff's New York office.

## FACTS COMMON TO ALL COUNTS

### A. The Parties' Relationship and the Agreement

10. Beginning no later than September 29, 2025, the parties operated under a prior agreement whereby Defendant agreed to supply Plaintiff with qualified personal injury leads in exchange for a monthly fee.

11. Effective February 1, 2026, the parties executed the Independent Contractor Agreement, annexed hereto as **"Exhibit 1"**, which superseded the prior agreement. Under the Agreement, Defendant agreed to provide marketing services — including lead generation, search engine optimization, social media marketing, and client-intake management — in exchange for a fee of $300,000 per month, payable on the last day of the preceding month.

12. In the Agreement's recitals, Defendant expressly covenanted that it "operates a fully compliant marketing company for New York State," that "all services performed under this Agreement are ethical," and that it would consult with Plaintiff, and specifically with Ester Aronova, Esq., regarding any questions concerning advertising and messaging.

13. The Agreement further provided that Defendant would "generate qualified leads at the agreed cost that this agreement is based on," defined a "qualified lead" as any legal matter

Plaintiff accepted for which the client "affords for representation through the conclusion of its matter," and obligated Defendant to supply replacement leads within thirty days of any rejection for client noncooperation or noncompliance.

14. Before and during negotiation of the Agreement, Defendant, through Klimis Topouzis and/or Defendant's other agents, represented to Plaintiff that Defendant could and would generate qualified leads at a cost of approximately $5,000 per qualified lead — such that the $300,000 monthly fee corresponded to approximately 60 qualified leads per month — and that Defendant's marketing operations were fully compliant with applicable law, including the Telephone Consumer Protection Act ("TCPA").

15. Plaintiff reasonably relied on these representations, and on the covenants recited in the Agreement itself, in agreeing to pay Defendant $300,000 per month and in agreeing to the Agreement's dispute-resolution provisions, including its mediation-then-arbitration clause.

**B. Defendant's Performance Fell Drastically Short of Its Representations**

16. Defendant's own case data, and the parties' course of dealing, show a rejection rate that increased in nearly every month leading up to, and immediately following, execution of the Agreement:

- October 2025: 8 leads submitted; 5 rejected (62.5%)
- November 2025: 13 leads submitted; 10 rejected (76.9%)
- December 2025: 41 leads submitted; 22 rejected (53.7%)
- January 2026: 47 leads submitted; 33 rejected (70.2%)
- February 2026: 66 leads submitted; 57 rejected (86.4%)
- March 2026: 89 leads submitted; 76 rejected (85.4%)

17. In total, of 265 leads Defendant submitted to Plaintiff between October 2025 and April 2026, 204 (approximately 77%) were rejected as unqualified and unable to be retained; only 57 remain active across all litigation stages (pre-litigation, litigation, and of-counsel matters combined); and only 4 have settled.

18.   Despite this documented and worsening performance, Defendant continued to accept $300,000 in monthly payments without disclosing to Plaintiff that it was, upon information and belief, incapable of delivering qualified leads anywhere near the represented volume, or that its marketing practices were producing a rejection rate that rendered the fee structure fundamentally unmoored from the value actually delivered.

19.   Defendant also failed to supply timely replacement leads within the required thirty-day window for rejected matters, further depriving Plaintiff of the benefit of its bargain.

20.   On June 5, 2026, Plaintiff, through Ester Aronova, Esq., sent Defendant a formal notice of material breach documenting these performance failures and demanding cure within fifteen days — including delivery of 143 additional qualified leads, valid replacements for rejected matters, a written remediation plan, and written confirmation of future compliance.

21.   Upon information and belief, Defendant did not cure the breaches identified in the letter of June 5, 2026, within the cure period, or at all.

### C. Defendant's Fraudulent Scheme and Its Effect on the Arbitration Clause

22.   Upon information and belief, Defendant knew, or recklessly disregarded, at the time it made the representations described above and at the time it executed the Agreement, that it could not generate qualified leads at anywhere near the represented volume, quality, or cost, as demonstrated by the immediate and escalating rejection rates that followed.

23.   Defendant made these misrepresentations, and omitted these material facts, to induce Plaintiff to enter into, and continue performing under, the Agreement — including its $300,000 monthly payment obligation and its mediation/arbitration clause — so that Defendant could continue collecting substantial monthly fees while providing leads of little or no value.

24.   Plaintiff's assent to the Agreement's dispute-resolution provisions was procured as part of the same fraudulent course of conduct as the rest of the Agreement: Defendant offered Plaintiff a private, cost-shared, non-appealable arbitration mechanism as part of an integrated bargain that Defendant did not intend to honor and did so knowing that its

performance would fall short of its representations, thereby limiting Plaintiff's recourse when that shortfall was discovered.

25. Had Plaintiff known the truth about Defendant's inability to deliver qualified leads as represented, Plaintiff would not have agreed to resolve disputes with Defendant through JAMS mediation and single-arbitrator, non-appealable binding arbitration, and would not have entered into the Agreement at all.

26. Enforcing the arbitration clause here would permit Defendant to use a provision procured through its own fraud as a shield against judicial scrutiny of that fraud, and would be unconscionable given the disparity in bargaining power, the non-negotiated and pre-printed nature of the clause, and Defendant's simultaneous demand — in the same Agreement — that Plaintiff indemnify Defendant for TCPA and other marketing-related complaints, a one-sided allocation of risk Plaintiff would not have accepted from a counterparty it knew was engaged in the conduct alleged herein.

## <u>COUNT I — FRAUD / FRAUDULENT INDUCEMENT</u>

*(New York Law)*

27. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 26 above as if fully set forth herein.

28. Defendant, through Klimis Topouzis and/or its other agents, represented to Plaintiff that Defendant could and would generate qualified personal injury leads at a cost of approximately $5,000 per qualified lead, in a volume sufficient to justify a $300,000 monthly fee, and that Defendant's marketing operations were fully compliant and ethical.

29. These representations were false when made. Defendant knew them to be false, or made them with reckless disregard for their truth, given Defendant's own visibility into its lead-generation methods, sourcing, and historical conversion and rejection rates.

30. Defendant made these representations with intent to deceive Plaintiff and to induce Plaintiff to enter into the Agreement and to make monthly payments of $300,000 to Defendant.

31. Plaintiff reasonably and justifiably relied on Defendant's representations in entering into the Agreement and in making payments to Defendant under it.

32. As a direct and proximate result of Defendant's fraud, Plaintiff has suffered damages, the exact amount to be determined at trial, but no less than $1,150,000.00, that being the difference between the amounts Plaintiff paid Defendant and the fair value of the qualified leads Defendant actually delivered, together with consequential damages arising from Plaintiff's reliance on Defendant's performance in its practice and client-intake planning.

33. Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages under New York law.

## COUNT II — BREACH OF CONTRACT

34. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 26 above as if fully set forth herein.

35. Notwithstanding that Plaintiff was fraudulently induced into entering into the Agreement, Plaintiff performed all its obligations under the Agreement, including timely payment of the monthly fee.

37. Defendant breached the Agreement by, among other things: (a) failing to generate qualified leads at the volume, cost, and quality represented and required under the Agreement; (b) failing to supply timely replacement leads within thirty days as required; (c) failing to consult with Plaintiff and Ester Aronova, Esq. regarding advertising and messaging as required; and (d) failing to operate a fully compliant and ethical marketing operation as covenanted in the Agreement.

38. As a direct and proximate result of Defendant's breaches, Plaintiff has suffered damages in an amount to be determined at trial, including the return of monthly fees paid in excess of the fair value of qualified leads actually delivered, calculated at the represented rate of $5,000 per qualified lead, in an amount of no less than $1,150,000.00.

## COUNT III — DECLARATORY JUDGMENT THAT THE MEDIATION AND ARBITRATION CLAUSE IS UNENFORCEABLE

*(28 U.S.C. §§ 2201–2202; 9 U.S.C. § 2)*

39.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 26 above as if fully set forth herein.

40.    An actual and justiciable controversy exists between the parties concerning the enforceability of the Agreement's mediation-then-binding-arbitration clause.

41.    The arbitration clause, like the remainder of the Agreement, was procured by Defendant's fraud as alleged herein. Plaintiff's assent to that specific clause was induced by the same false representations regarding Defendant's lead-generation capacity and compliance that induced Plaintiff's assent to the Agreement as a whole, such that no valid, enforceable agreement to arbitrate ever came into existence.

42.    In the alternative, the arbitration clause is unconscionable and unenforceable because: (a) it was drafted unilaterally by Defendant and presented to Plaintiff on a non-negotiated basis; (b) it requires equal cost-sharing of JAMS fees regardless of the parties' relative size and resources; (c) it results in a final, non-appealable decision by a single arbitrator, foreclosing meaningful judicial review; and (d) it was bundled with a one-sided indemnification provision benefiting only Defendant, evincing the fundamentally one-sided nature of the bargain.

43.    In the further alternative, Defendant should be equitably estopped from enforcing the arbitration clause because it would be unjust to permit Defendant to invoke a dispute-resolution mechanism that is itself a product of, and shield for, fraud alleged herein.

44.    Plaintiff seeks a declaration, pursuant to 28 U.S.C. §§ 2201–2202, that the mediation and arbitration clause in the Agreement is void, unenforceable, or otherwise inapplicable to the claims asserted in this action, and that Plaintiff may proceed with this action in this Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

    (a) On Count I, compensatory damages of at least $1,150,000.00, together with punitive damages;

    (b) On Count II, compensatory damages of at least $1,150,000.00, to be determined at trial, including restitution of fees paid in excess of the value of qualified leads delivered;

    (c) On Count III, a declaration that the Agreement's mediation and arbitration clause is void and unenforceable as to Plaintiff's claims, and that this action may proceed in this Court;

    (d) Pre-judgment and post-judgment interest as permitted by law;

    (e) Costs and disbursements of this action, including reasonable attorneys' fees to the extent permitted by law or contract; and

    (f) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: Garden City, New York
     July 21, 2026

Respectfully submitted,
SANDERS GROSSMAN ARONOVA, PLLC

By: STEVEN J. NEUWIRTH, ESQ. (NY 2533479)

Attorneys for Plaintiff
100 Garden City Plaza, Suite 408
Garden City, New York 11530
(516) 741-4799/ sneuwirth@sgafirm.com