# EXHIBIT 1

ELITE
ACCIDENT HELP

1414 NW 107th Ave, Unit 415
Sweetwater FL, 33172
(786) 671-1714
elite@eliteaccidenthelpfl.com

# INDEPENDENT CONTRACTOR AGREEMENT

**This Independent Contractor Agreement (the "Agreement")** is made effective as of February 1, 2026, by and between **Elite Accident Help Corp.,** who is contracted to provide services and shall be referred to as "Recipient", and **Sanders Aronova Grossman Woycik Viener and Kalant, PLLC**, who is the party receiving services from the Recipient and shall/may be referred to as "Contractor."

**BACKGROUND.**

A. The Recipient is agreeable to provide such services to the Contractor on the terms and conditions set out in this Agreement.

B. The Recipient covenants that it operates a fully compliant marketing company for New York State.

C. The Recipient agrees that all services performed under this Agreement are ethical and if there are any questions regarding any advertising and messaging that it will consult with Contractor and more specifically Ester Aronova.

D. The Recipient indemnifies Contractor for all complaints, issues associated with its marketing including but not limited to TCPA, complaints regarding specific campaigns etc.

E. Contractor agrees that it will provide legal services commensurate with its reputation in the most ethical and professional manner.

**IN CONSIDERATION OF** the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the Recipient and the Contractor (individually the "Party" and collectively the "Parties" to this Agreement) agree as follows:

**TERM OF AGREEMENT.** The term of this Agreement (the "Term") will begin on the date of this Agreement and will remain in full force and effect for ninety days (90). The parties will determine at that point if the Agreement remains in effect for a longer period pursuant to the Termination provision as outlined herein.

**SCOPE OF SERVICES.** Beginning on September February 1, 2026 Recipient will provide marketing services, including but not limited to, business development, strategic introductions, marketing strategy development, search engine optimization (SEO), social media marketing, content marketing, email marketing, influencer marketing, video marketing, event marketing, payper-click advertising (PPC), print advertising, broadcast advertising, outdoor advertising, competitor analysis, target audience research, client intake management, lead conversion, client retention, analytics and reporting any/all direct or indirect representation of Elite Accident Help Corp. on behalf of The Sanders Law Firm or The Sanders Law Firm clients (collectively, the "Services").

**PAYMENT FOR SERVICES.** Contractor agrees to pay Recipient $300,000 every month with payment delivered on the last day of the prior month.

January 31, 2026 - $300,000 DUE

February 28th, 2026 - $300,000 DUE

March 31st, 2026 - $300,000 DUE

The Recipient shall provide the Contractor with a monthly report detailing the services rendered during the preceding month. The fee structure established herein shall be reviewed by all parties on a quarterly basis. Any change in the fee structure, whether in form, amount, or otherwise, shall require discussion and the mutual written agreement of all parties. Any modification to the fee structure agreed upon by the parties shall take effect beginning with the payment cycle immediately following the date of such agreement and shall not apply retroactively to any prior payment cycle. All payments shall be made via ACH transfer, wire transfer, or check payable to Elite Accident Help Corp., unless otherwise agreed in writing by the parties.

**EXPECTATIONS.** Recipient agrees that it will generate qualified leads at the agreed cost that this agreement is based on. A qualified lead will be any legal matter that Contractor accepts whereby that client affords for representation through the conclusion of its matter. Any substitutions, need for withdrawal due to client noncooperation, rejections for client noncompliance would result in Contractor's right to seek replacements from Recipient. Replacements must be sent by Recipient to Contractor within thirtey (30) Days from when the case being replaced was first sent to the Contrator. This process of providing notice of substitutions for non-qualifying matters shall be emailed amongst the parties and there will be a monthly meeting via phone or in person to discuss campaign census to ensure that the expectations are met for both parties.

**TERMINATION.** Either Party may terminate this agreement at any time and for any reason upon 30 days' advance written notice to the other party. If either Party breaches a material provision under this Agreement, the non-defaulting Party may terminate this Agreement immediately and require the defaulting Party to indemnify the non-defaulting Party against all reasonable damages. This Agreement may be terminated at any time by the mutual agreement of the Parties. Except as otherwise provided in this Agreement, the obligations of the parties will end upon the termination of this Agreement.

**RELATIONSHIP OF PARTIES.** It is understood by the parties that the Recipient is an independent contractor with respect to the Contractor, and not an employee of the Contractor. The Contractor will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of the Recipient.

It is contemplated that the relationship between the Contractor and the Recipient shall be a non-exclusive one. The Recipient may also perform services for other organizations and/or individuals.

**CONTRACTOR'S CONTROL.** The Contractor has no right or power to control or otherwise interfere with the Recipient's mode of affecting performance under this Agreement.

**PROFESSIONAL CAPACITY**. The Recipient is a professional(s) who uses his or her own professional and business methods to perform services. The Contractor has not and will not receive training from the Recipient regarding how to perform the Services.

**PERSONAL SERVICES NOT REQUIRED.** The Recipient is not required to render Services personally and may employ others to perform Services on behalf of the Contractor. If the Recipient has assistance, it is the Recipient's responsibility to hire, train, and provide all necessary requirements to perform job duties.

**CONFIDENTIALITY.** The Recipient has access to proprietary, private and/or otherwise confidential information ("Confidential Information") from the Contractor. Confidential Information shall mean all non-public information which constitutes, relates or refers to business operations of the Contractor, including without limitation, all financial, investment, operational, personnel, sales, marketing, managerial and statistical information of the Contractor, and all trade secrets, customer lists, or pricing information of the Contractor. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential. The Recipient will not at any time or in any manner, either directly or indirectly, use this information for the personal benefit of the Recipient, or divulge, disclose, or communicate in any manner Confidential Information. The Recipient will protect such information and treat the Confidential Information as strictly confidential. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, the Recipient will return to the Contractor all Confidential Information, whether

physical or electronic, and other items that were used, created, or controlled by the Recipient during the term of this Agreement. In return, the Contractor will, in the same manner, protect and return any/all Confidential Information to the Recipient.

This Agreement is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed in a lawsuit if made under seal.

**WAIVER OF BREACH.** The waiver by either Party of a breach, default, delay or omission of any of the provisions of this Agreement by the other Party will not be construed as a waiver of any subsequent breach of the same or other provisions.

**SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**FACSIMILE/ELECTRONIC SIGNATURES COUNTERPARTS**. The parties can sign this Agreement in counterparts, and facsimile and/or electronic signatures shall have the same force and effect as originals.

**CHOICE OF LAW**. This Agreement shall be based on New York law.

**MEDIATION BEFORE ARBITRATION**. The Parties agree that all disputes, claims or controversies arising out of or relating to this Agreement shall be submitted to JAMS, or its successor, for mediation, and if the matter is not resolved through mediation, then it shall be submitted to JAMS, or its successor, for binding arbitration. Either Party may commence mediation by providing JAMS and the other Party with a written request for mediation, setting forth the subject of the dispute (including a summary of the facts on which the submitting party bases its claims) and the relief requested. The Parties will cooperate with JAMS and with one another in selecting a mediator from the JAMS panel of neutrals for mediation proceedings. If the Parties fail to agree upon a mediator within ten (10) days after written notice from either Party requesting mediation, the complaining party shall have a mediator designated in accordance with the rules of JAMS. The Parties agree that they will participate in the mediation in good faith and that they will share equally in the costs of mediation (including the cost to commence the mediation) but shall otherwise bear its own attorneys' fees in the mediation. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by either of the Parties, its agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are

confidential, privileged and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

**BINDING ARBITRATION AFTER MEDIATION.** If the Parties are unable to negotiate a resolution pursuant to the mediation procedures set forth in Paragraph 19hereof, within ninety (90) days after the filing of the request for mediation, either Party may demand binding arbitration. Such binding arbitration shall be using JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. The Party making the request will notify the other party of the request for arbitration in writing. The arbitrator shall be pursuant to the arbitration rules of JAMS, except that there shall be a single arbitrator. Each Party will pay its own costs and expenses in the arbitration and shall share equally all costs and expenses related to JAMS in commencing and prosecuting the arbitration. The arbitration shall take place in New York, New York. The decision of the arbitrator shall be final, binding and not appealable to any Court.

**NEGOTIATION.** Drafting Construction; Waiver. The Parties acknowledge and agree that they have reviewed and cooperated in the preparation of this Agreement, and that any rule of construction that would construe this Agreement against the drafter shall not apply and hereby the parties waive. Again, the Parties further acknowledge and agree that they enter into this Agreement freely, after arms-length bargaining, with the advice of counsel (or the opportunity to seek advice from counsel), and in the absence of coercion, duress, or undue influence.
NOTICES. All notices required or permitted hereunder shall be sent by certified mail, return receipt requested, to the address of the party as set forth in the introduction of this Agreement. Notices may also be given by email. For Contractor: earonova@aalawny.com

**ENTIRE AGREEMENT.** This Agreement constitutes the entire contract between the parties. All terms and conditions contained in any other writings previously executed by the parties regarding the matters contemplated herein shall be deemed to be merged herein and superseded hereby. No modification of this Agreement shall be deemed effective unless in writing and signed by the parties hereto

SIGNATURE PAGE FOLLOWS

CONTRACTOR: The Sanders Aronova Grossman Woycik Viener & Kalant, PLLC

By: ______________________ Date: 2/2/2026

ESTER ARONOVA, ESQ.

RECIPIENT: Elite Accident Help corp.

By: ______________________ Date: 2/2/2026

Klimis Topouzis